# EXHIBIT A

Filing # 142259007 E-Filed 01/19/2022 03:01:33 PM

IN THE COUNTY COURT OF THE TENTH JUDICIAL CIRCUIT
IN AND FOR POLK COUNTY, FLORIDA
CIVIL DIVISION

Monica Caine,

　　　　*Plaintiff*,

　　v.

**Online Information Services, Inc.,** *and*
**Equifax Information Services, LLC**

　　　　*Defendants*.

Case Number:

**JURY TRIAL DEMANDED**

## COMPLAINT & JURY TRIAL DEMAND

　　COMES NOW the Plaintiff, **Monica Caine** ("**Ms. Caine**"), by and through her attorneys, Seraph Legal, P.A., and complains of the Defendants, **Online Information Services, Inc.** ("**Online**"), and **Equifax Information Services, LLC** ("**Equifax**") (jointly, the "**Defendants**"), stating as follows:

### PRELIMINARY STATEMENT

　　1.　　This is an action for damages for more than $8,000 but not exceeding $30,000, brought by Ms. Caine against Online for violations of the *Fair Debt Collection Practices Act*, 15 U.S.C. § 1692, *et seq*. ("**FDCPA**"), and the *Florida Consumer Collection Practices Act*, Section 559.55, Florida Statutes, *et seq*. ("**FCCPA**"), and against both Defendants for violations of the *Fair Credit Reporting Act*, 15 U.S.C. § 1681, *et seq*. ("**FCRA**").

### JURISDICTION AND VENUE

　　2.　　Jurisdiction arises under the FDCPA, 15 U.S.C. § 1692k(d), the FCCPA, Section 559.77(1), Florida Statutes, the FCRA, 15 U.S.C. § 1681p, and Section 34.01, Florida Statutes.

　　3.　　The Defendants are subject to the provisions of the FDCPA, the FCCPA, and/or the FCRA, and to the jurisdiction of this Court pursuant to Section 48.193, Florida Statutes.

4.      Venue is proper in Polk County, Florida, pursuant to Section 47.051, Florida Statutes, because the acts complained of were committed and/or caused by the Defendants therein.

## PARTIES

### Ms. Caine

5.      **Ms. Caine** is a natural person residing in the City of Mulberry, Polk County, Florida.

6.      Ms. Caine is a *Consumer* as defined by the FDCPA, 15 U.S.C. § 1692a(3), the FCCPA, Section 559.55(8), Florida Statutes, and the FCRA, 15 U.S.C. § 1681a(c).

### Online

7.      **Online**, which also conducts business under the name "**Online Collections**," is a North Carolina corporation with a primary business address of **685 W. Fire Tower Rd., Winterville, NC 28590**.

8.      Online is registered to conduct business in the State of Florida, where its Registered Agent is **Corporation Service Company 1201 Hays Street, Tallahassee, Florida 32301**.

9.      Online is a *Debt Collector* within the meaning of the FDCPA, 15 U.S.C. §1692a(6), and the FCCPA, Section 559.55(7), Florida Statutes, in that it uses an instrumentality of commerce, interstate and within the State of Florida, for its business, the principal purpose of which is the collection of debts, and/or it regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

10.      Online is registered with the Florida Office of Financial Regulation as a *Consumer Collection Agency* ("CCA"), holding license number **CCA0900401**.

## Equifax

11.     **Equifax** is a Georgia limited liability company, with a primary business address of **1550 Peachtree Street NW, H-46, Atlanta, GA 30309.**

12.     Equifax is registered to conduct business in the State of Florida, where its Registered Agent is **Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301.**

13.     Equifax is a nationwide *Consumer Credit Reporting Agency* ("CRA") within the meaning of the FCRA, 15 U.S.C. § 1681a(f), in that it, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and uses various means of interstate commerce for the purpose of preparing or furnishing consumer reports, specifically including mail and telephone communications.

## FACTUAL ALLEGATIONS

14.     In January 2019, Ms. Caine moved from her prior residence in Lakeland, Florida.

15.     Ms. Caine requested electric services provided by Lakeland Electric Company ("**Lakeland Electric**") to be terminated at her prior address.

16.     However, Lakeland Electric later alleged Ms. Caine owed $185 for services at her prior address (the "**Debt**").

17.     The Debt arose from the purchase of services which were primarily for family, personal, or household purposes, specifically electric services for Ms. Caine's residence, and thus meets the definitions of *Debt* under the FDCPA, 15 U.S.C. § 1692a(5), and the FCCPA, Section 559.55(6), Florida Statutes.

18.     Ms. Caine disputes owing the Debt.

19.    Around November 5, 2019, Lakeland Electric assigned or otherwise transferred the Debt to Online for collection.

20.    Around February 2020, Online reported the Debt to various nationwide CRAs, including Equifax. **SEE PLAINTIFF'S EXHIBIT A.**

21.    Reporting a debt to a CRA is an attempt to collect the debt alleged therein. *See, e.g., Edeh v. Midland Credit Management, Inc.,* 748 F. Supp. 2d 1030 (D. Minn. 2010) ("The Court has learned, through its work on countless FDCPA cases, that threatening to report and reporting debts to CRAs is one of the most commonly-used arrows in the debt collector's quiver.")

22.    Online reported the account under its internal account number 130196000738*.

23.    Around April 2020, Online began reporting the Debt a second time under a different account number, 830196000165*.

24.    Online was therefore reporting the same account, twice, to Ms. Caine's credit.

25.    A reader of Ms. Caine's reports would believe she had *two* separate, distinct debts of $185 due to Lakeland Electric, even though Lakeland Electric, the original creditor, claimed only one $185 debt was owed.

26.    The duplication of tradelines negatively impacted Ms. Caine's credit scores, since almost all consumer credit scores heavily consider the number of collection accounts reporting on a consumer's credit history and score consumers with higher numbers of collections more punitively than those with fewer.

27.    Online's second iteration of its tradeline claimed the "date of first delinquency" ("**DOFD**") was August 30, 2019. **SEE PLAINTIFF'S EXHIBIT B.**

28.    Thus, Online was claiming Ms. Caine had first become delinquent on an electric bill at her prior residence seven months after moving out.

29.     Ms. Caine did not accrue two identical electric bills, to the same original creditor, for the same amount, at the same house.

30.     Online advertises itself as experts in the recovery of utility bills and, presumably, is aware that Lakeland Electric, like virtually all other utility providers in the United States, do not allow a consumer to have multiple accounts which are billed from the same individual power meter.

31.     Online knew, or should have known, that it was reporting the same account twice to Equifax.

32.     Despite the obvious duplication of the Online account, Equifax included both iterations of the tradeline in reports sold regarding Ms. Caine.

33.     On or about October 25, 2021, Ms. Caine disputed Online's duplicate tradelines to Equifax, specifically mentioning the tradelines had been duplicated.

34.     Equifax, upon receipt of Ms. Caine's disputes, sent Online two *Automated Consumer Dispute Verification* requests ("**ACDVs**") through a system known as e-OSCAR, asking Online to make reasonable investigations into the disputes pursuant to the FCRA.

35.     Online made no meaningful investigation into the crux of Ms. Caine's disputes, performing only a quick, rudimentary verification of her name, address, account number, etc., appearing on CRA records against its own internal records.

36.     Online then responded to the two ACDVs indicating its reported information was accurate – for both tradeline iterations. **SEE PLAINTIFF'S EXHIBIT C.**

37.     Online therefore failed to conduct a reasonable investigation into Ms. Caine's disputes, as any reasonable investigation would have concluded the Debt was being reported twice under two different account numbers, and both iterations could not possibly be correct.

38.     Even if Online believed its data was technically accurate and a $185 debt was owed, it was nonetheless aware the duplication of data would be materially misleading to a reader of the report.

39.     Technically accurate but misleading information still gives rise to a violation of the FCRA, especially when the data furnisher has good reason to know it is misleading. *See, e.g., Bush v. RoundPoint Mortg. Servicing Corp.*, 122 F. Supp. 3d 1347 (M.D. Fla. 2015).

40.     If a data furnisher like Online chooses to report disputed information as verified, "the question of whether the furnisher behaved reasonably will turn on whether the furnisher acquired sufficient evidence to support the conclusion that the information was true." *Hinkle v. Midland Credit Management, Inc.* (11th Cir.) 827 F.3d 1295 (2016).

41.     If, for some reason, Online could not determine its tradelines were duplicated, Online could have easily inquired with Lakeland Electric directly to see if it was reporting duplicate information, but it did not.

42.     Online does not empower its employees or contractors responding to ACDVs to make any investigation beyond comparing data on the ACDV – *e.g.*, the consumer's name, address, account balance, etc. – with the data in Online's own internal computer system.

43.     Such policies virtually guarantee it will confirm as "accurate" information which is not, in reality, accurate, especially when the consumer's dispute requires investigation beyond data contained in Online's computer systems.

44.     Ms. Caine made a second set of disputes concerning the Online tradelines to Equifax in December 2021, reiterating that the Debt was duplicated.

45.     Online verified both of these disputes as "accurate" as well. **SEE PLAINTIFF'S EXHIBIT D.**

46.     Incredibly, Online then reported the same debt for a third time, causing the singular Debt to appear thrice on Ms. Caine's credit report. **SEE PLAINTIFF'S EXHIBIT E.**

47.     Online, despite knowing the Debt was disputed, failed to disclose in its reporting of the third tradeline that the Debt was disputed. *Id.*

48.     Online had no right to determine on its own whether Ms. Caine's dispute was meritorious, since the FDCPA requires a debt collector to communicate a debt is disputed once known. *See* 15 U.S.C. § 1692e(8).

49.     The FDCPA at § 1692e(8) "does not require an individual's dispute be valid or even reasonable. Instead, the plaintiff must simply make clear that he or she disputes the debt." *DeKoven v. Plaza Assocs.*, 599 F.3d 578, 582 (7th Cir. 2010) ("[A] consumer can dispute a debt for 'no reason at all ....'").

50.     Online had no right to unilaterally nullify Ms. Caine's dispute. *See, e.g., Evans v. Portfolio Recovery Associates*, 889 F. 3d 337 (7th Cir 2018).

51.     Most commercially used credit scores, including most versions of FICO, the most commonly used credit scores in the United States, will disregard a collection tradeline reported with a *Compliance Condition Code* ("**CCC**") indicating the consumer disputes the debt.

52.     Thus, Online's failure to report a disputed debt as disputed caused unfair, and undue, damage to Ms. Caine's credit report and scores. "Put simply, the failure to inform a credit reporting agency that the debtor disputed his or her debt will always have influence on the debtor, as this information will be used to determine the debtor's credit score." *Evans v. Portfolio Recovery Associates, LLC*, 889 F. 3d 337 (7th Cir. 2018).

53.     Due to numerous and obvious red flags, Equifax knew, or should have known, that Online was reporting the same account three separate times.

54. Equifax has no reasonable procedures in place to prevent obvious duplicate (or triplicate) accounts from appearing multiple times in a consumer's credit history.

55. Equifax's inclusion of the duplicate tradelines caused significant harm to Ms. Caine's credit scores, as the number of collection accounts on a consumer's report adversely affects the consumer's scores.

56. Equifax also had a duty to independently investigate Ms. Caine's disputes, but it did not.

57. Equifax's dispute resolution systems are almost completely automated.

58. The overwhelming majority of Equifax's consumer dispute resolution is performed automatically via a system it calls "ACIS," which stands for "Automated Consumer Interview System".

59. According to the Federal Trade Commission ("**FTC**"), the ACIS "was originally built in the 1980s and even in-house Equifax documents referred to it as 'archaic' and 'antiquated technology.'" *See Federal Trade Commission vs. Equifax Inc.,* Case 1:19-mi-99999-UNA, U.S.D.C., N.D. Georgia, July 22, 2019.

60. Hackers were able to gain access to Equifax's ACIS and download data on over 147 million consumers, including 145.9 million Social Security numbers. These intrusions went unnoticed by Equifax for months. The FTC later learned that hackers were able to obtain passwords for Equifax systems that were stored, unencrypted, in plain English, on the ACIS.

61. Equifax disclosed this breach on September 7, 2017, well after learning of it. Before publicly disclosing the data breach, several Equifax executives sold massive amounts of Equifax stock – stock which dropped over 50% in value the day that news of the breach was reported. At least one executive later pled guilty to felony insider trading.

62.     Equifax later reached a $575 million settlement with the FTC over the ACIS data breach.

63.     Equifax upgraded ACIS' security to better protect it from intrusion by hackers, but it did nothing to upgrade the *functionality* of the ACIS in terms of dispute resolution.

64.     Equifax's ACIS is out-of-date and designed to run on systems which are no longer in use. Parts of Equifax's ACIS were designed to run on MSDOS, VAX/VMS, UNIX in C, Pascal, and FORTRAN – computer-language equivalents of Latin or Sumerian.

65.     Upon receipt of Ms. Caine's disputes, Equifax's Cold War-era ACIS initiated ACDVs that were then sent to Online through e-OSCAR.

66.     Equifax also allows consumers to call a toll-free phone number to place disputes over the phone. However, disputes made in this manner are still resolved via ACIS; calls are answered by an overseas contractor whose employees simply enter dispute information into ACIS. In essence, "dispute resolution" personnel simply provide data-entry services, leaving the consumer in the same boat they would have been in had they made the dispute online themselves.[1]

67.     Online selected the "verified with updates" option on the ACDVs and sent them back to Equifax via e-OSCAR.

68.     However, the updated information was identical to the previously reported information.

69.     Equifax's "dispute results" disclosure to Ms. Caine makes clear it played no role in the evaluation of Ms. Caine disputes, stating:

---

[1] If Equifax's computer systems identify the caller as a "V.I.P." – a celebrity, Senator, federal judge, Congressperson, or similar, the call is routed to an Equifax representative in the United States, who is empowered to modify tradeline data based on the V.I.P.'s assertions. See *Credit Error? It Pays to Be on V.I.P. List*, New York Times, May 14, 2011.

In this situation:

- We request that the reporting company verify the accuracy of the information you disputed;

- We provide them with any relevant information and supporting documentation you provided us with the dispute to consider as part of the investigation; and

- We request that they send Equifax a response to your dispute and update their records and systems, as necessary.

70.     Upon receipt of the ACDV responses, Equifax's ACIS performed a rudimentary check of tradeline data between what Online had reported and the data contained in Equifax's own file on Ms. Caine, *e.g.*, her name, address, date of birth, and Social Security number.

71.     Equifax made no other inquiry of its own and otherwise relied solely upon Online's "verification" of the data to complete its purported "investigation."

72.     For at least the last 35 years, courts in this district have recognized that a CRA cannot rely upon its data furnisher exclusively when the consumer disputes the accuracy of the furnisher's version of events and provides evidence to the contrary. The CRA must make some independent investigation of its own. "Merely reporting whatever information the creditor furnished was not reasonable, especially where the defendant knew of the impending dispute between the (consumer) and (data furnisher)." *Swoager v. Credit Bureau of Greater St. Petersburg*, 608 F. Supp. 972 (M.D.Fla.1985).

73.     The standard for judging the reasonableness of procedures "is what a reasonably prudent person would do under the circumstances." *Stewart v. Credit Bureau, Inc.*, 734 F.2d 47, 51 (D.C. Cir. 1984).

74.     In the instant matter, Equifax had no basis to conclude that Online's information was accurate, as any analysis of the available data would show the tradelines were, indeed, duplicates.

75. Equifax's dispute resolution system is underpinned by the premise that its data furnishers, from whom it receives revenue monthly, are correct until categorically proven wrong by the consumer.

76. Equifax's blind-faith belief in the accuracy of its data furnishers is apparently not shaken even when Online reported the identical tradeline for a *third* time.

77. Equifax produced and sold at least four reports to Ms. Caine's creditors, or potential creditors, which included the false and defamatory duplicate (or triplicate) Online tradelines.

78. Ms. Caine has suffered from emotional distress and economic loss because of these false reports.

79. Online's credit reports to the CRAs are *Communications* as defined by the FDCPA, 15 U.S.C. § 1692a(2), and the FCCPA, Section 559.55(2), Florida Statutes.

80. Ms. Caine has hired the aforementioned law firm to represent her in this matter and has assigned her right to fees and costs to such firm.

### COUNT I
### ONLINE'S VIOLATIONS OF THE FDCPA – 15 U.S.C. § 1692e

81. Ms. Caine adopts and incorporates paragraphs 1 – 80 as if fully stated herein.

82. Online violated **15 U.S.C. § 1692e** when it made a false representation in an attempt to collect a debt by reporting a debt it knew was disputed to Equifax without disclosing the Debt was disputed, and by reporting the same account twice (and later thrice) to Equifax, thereby falsely representing that Ms. Caine had multiple delinquent accounts and owed at least twice as much as was actually alleged owed by the original creditor, Lakeland Electric.

83. Online's actions render it liable for the above-stated violations of the FDCPA, and Ms. Caine is therefore entitled to statutory damages up to $1,000.00 as well as other relief.

## COUNT II
## ONLINE'S VIOLATIONS OF THE FDCPA – 15 U.S.C. § 1692e(10)

84.     Ms. Caine adopts and incorporates paragraphs 1 – 80 as if fully stated herein.

85.     Online violated **15 U.S.C. § 1692e(10)** when it made a false representation in an attempt to collect a debt by reporting a debt it knew was disputed to Equifax without disclosing the Debt was disputed, and by reporting the same account twice (and later thrice) to Equifax, thereby falsely representing that Ms. Caine had multiple delinquent accounts and owed at least twice as much as was actually alleged owed by the original creditor, Lakeland Electric.

86.     Online's actions render it liable for the above-stated violations of the FDCPA, and Ms. Caine is therefore entitled to statutory damages up to $1,000.00 as well as other relief.

## COUNT III
## ONLINE'S VIOLATIONS OF THE FDCPA – 15 U.S.C. § 1692e(8)

87.     Ms. Caine adopts and incorporates paragraphs 1 – 80 as if fully stated herein.

88.     Online violated **15 U.S.C. § 1692e(8)** when it communicated credit information known to be false, or which should have been known to be false, specifically when it reported a duplicate, and later triplicate, tradeline to Equifax regarding the Debt, and also failing to disclose that the Debt was disputed.

89.     Online violated **15 U.S.C. § 1692e(8)** when it communicated credit information known to be disputed, without disclosure of dispute, in its reports regarding the Debt to Equifax.

90.     Online's actions render it liable for the above-stated violations of the FDCPA, and Ms. Caine is therefore entitled to statutory damages up to $1,000.00 as well as other relief.

## COUNT IV
## ONLINE'S VIOLATIONS OF THE FDCPA – 15 U.S.C. § 1692e(2)(a)

91.     Ms. Caine adopts and incorporates paragraphs 1 – 80 as if fully stated herein.

92.     Online violated **15 U.S.C. § 1692e(2)(a)** when it made false representations about the character, amount and legal status of a debt by reporting a debt it knew was disputed to Equifax without disclosing the Debt was disputed, and by reporting the same account twice (and later thrice) to Equifax, thereby falsely representing that Ms. Caine had multiple delinquent accounts and owed at least twice as much as was actually alleged owed by the original creditor, Lakeland Electric.

93.     Online's actions render it liable for the above-stated violations of the FDCPA, and Ms. Caine is therefore entitled to statutory damages up to $1,000.00 as well as other relief.

## COUNT V
## ONLINE'S VIOLATIONS OF THE FDCPA – 15 U.S.C. § 1692f

94.     Ms. Caine adopts and incorporates paragraphs 1 – 80 as if fully stated herein.

95.     Online violated **15 U.S.C. § 1692f** when it used unfair and unconscionable methods in connection with the collection of a debt by reporting a singular debt twice, and later three times, to Equifax, claiming it was different debts and thereby falsely representing that Ms. Caine had multiple delinquent accounts and owed at least twice as much as was actually alleged owed by the original creditor, Lakeland Electric. Online knew, or should have known, such actions would unfairly harm Ms. Caine's credit reports and scores.

96.     Online's actions render it liable for the above-stated violations of the FDCPA, and Ms. Caine is therefore entitled to statutory damages up to $1,000.00 as well as other relief.

## COUNT VI
## ONLINE'S VIOLATIONS OF THE FCCPA – FLA. STAT. § 559.72(6)

97.     Ms. Caine incorporates paragraphs 1 – 80 as if fully restated herein.

98.     Online violated **Section 559.72(6), Florida Statutes** when it communicated credit information which it knew was disputed without disclosure of dispute, when it reported the Debt to Equifax as undisputed and by reporting the same account twice (and later three times) to Equifax, thereby falsely representing that Ms. Caine had two delinquent accounts and owed twice as much.

99.     Online's actions were willful, intentional, done with malice, and done with the intention of essentially holding Ms. Caine's credit hostage to force her to pay a disputed debt.

100.    "Malice can be established by evidence showing the defendant made a false statement 'with knowledge that it was false or with reckless disregard of whether it was false or not.'" *Long v. Pendrick Capital Partners II, LLC*, Case No.: GJH-17-1955 (D. Md. Mar. 18, 2019) (quoting *New York Times v. Sullivan*, 376 U.S. 254, 270-80 (1964)).

101.    By its conduct, Online is liable for the above-stated violation of the FCCPA.

## COUNT VII
## ONLINE'S VIOLATIONS OF THE FCRA – 15 U.S.C. § 1681s-2(b)

102.    Ms. Caine adopts and incorporates paragraphs 1 – 80 as if fully stated herein.

103.    Online violated **15 U.S.C. § 1681s-2(b)** when it failed to update, modify, or correct its reports after receiving notices of dispute from Equifax on a total of four different occasions. Any reasonable investigation would have concluded that the purported Lakeland Electric Debt could not be verified as accurate since the same alleged debt was reported multiple times under different account numbers.

104.    The information Online reported and verified was clearly inaccurate, and indeed no reasonable investigations were actually conducted by the Online.

105.   Online's conduct was willful and intentional, or, alternately, was done with a reckless disregard for its duties under the FCRA to make reasonable investigations, and its policies could reasonably be foreseen to cause harm to Ms. Caine.

106.   As a result of its conduct, Online is liable to Ms. Caine pursuant to the FCRA for statutory damages of up to $1,000 for *each occurrence*, and other relief.

107.   Online's above actions caused Ms. Caine to suffer damages to her credit report and scores, as well as emotional distress in having to deal with an account being reported multiple times and which she disputed to no avail.

## COUNT VIII
## EQUIFAX'S VIOLATIONS OF THE FCRA – 15 U.S.C. § 1681e(b)

108.   Ms. Caine adopts and incorporates paragraphs 1 – 80 as if fully stated herein.

109.   Equifax violated **15 U.S.C. § 1681e(b)** when it failed to follow reasonable procedures to assure maximum possible accuracy of consumer reports sold regarding Ms. Caine when Equifax sold at least **4 reports** which contained the duplicate or triplicate Online tradelines.

110.   Equifax's conduct was willful and intentional, or, alternately, was done with a reckless disregard for its duties under the FCRA to provide reports with maximum possible accuracy and to investigate consumer disputes, and its policies could reasonably be foreseen to cause harm to Ms. Caine.

111.   As a result of its conduct, Equifax is liable to Ms. Caine pursuant to the FCRA for statutory damages of up to $1,000 for *each occurrence*, and other relief.

112.   Equifax's actions caused Ms. Caine to suffer damages to her credit report and scores, as well as emotional distress in having to deal with an account which was reported multiple times concurrently.

**COUNT IX**
**EQUIFAX'S VIOLATIONS OF THE FCRA – 15 U.S.C. § 1681i(a)(1)(A)**

113.    Ms. Caine adopts and incorporates paragraphs 1 – 80 as if fully stated herein.

114.    Equifax violated **15 U.S.C. § 1681e(b)** when it failed to conduct a reasonable investigation into at least four disputes by Ms. Caine in 2021. Had Equifax conducted a reasonable investigation, it would have deleted at least one, if not both, of the duplicate tradelines; however, Equifax instead incorporated both iterations of the tradeline into its reports sold regarding Ms. Caine.

115.    Equifax's conduct was willful and intentional, or, alternately, was done with a reckless disregard for its duties under the FCRA to provide reports with maximum possible accuracy and to investigate consumer disputes, and its policies could reasonably be foreseen to cause harm to Ms. Caine.

116.    As a result of its conduct, Equifax is liable to Ms. Caine pursuant to the FCRA for statutory damages of up to $1,000 for *each occurrence*, and other relief.

117.    Equifax's actions caused Ms. Caine to suffer damages to her credit report and scores, as well as emotional distress in having to deal with an account which was reported multiple times concurrently.

**PRAYER FOR RELIEF – ONLINE**

**WHEREFORE**, Ms. Caine respectfully requests this Honorable Court enter judgment in her favor, and against Online, for:

a.      Statutory damages of **$1,000.00**, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

b.      Statutory damages of **$1,000.00**, pursuant to Section 559.77(2), Florida Statutes;

c.      Statutory damages of **$4,000.00**, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

d.     Actual damages, including damages for loss of credit opportunities, damage to credit scores, and for emotional distress;

e.     Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3), Florida Statute § 559.77(2), 15 U.S.C. § 1681n(a)(3), and / or 15 U.S.C. § 1681o(a)(2); and,

f.     Such other relief that this Court deems just and proper.

## PRAYER FOR RELIEF – EQUIFAX

**WHEREFORE,** Ms. Caine respectfully requests this Honorable Court enter judgment in her favor, and against Equifax, for:

a.     Statutory damages of **$8,000.00**, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.     Actual damages, including damages for loss of credit opportunities, damage to credit scores, and for emotional distress;

c.     Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

d.     Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3), and / or 15 U.S.C. § 1681o(a)(2); and,

e.     Such other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Ms. Caine hereby demands a jury trial on all issues so triable.

Respectfully submitted on **January 19, 2022**, by:

SERAPH LEGAL, P.A.

*/s/ Brandon D. Morgan*
Brandon D. Morgan, Esq.
Florida Bar No.: 1015954
BMorgan@SeraphLegal.com

*/s/ Thomas M. Bonan*
Thomas M. Bonan, Esq.
Florida Bar No.: 118103
TBonan@SeraphLegal.com

1614 North 19th Street
Tampa, FL 33605
Tel: 813-567-1230
Fax: 855-500-0705
*Counsel for Plaintiff*

## ATTACHED EXHIBITS LIST
A       Plaintiff's Equifax Consumer Disclosure, October 21, 2021, First Iteration – Excerpt
B       Plaintiff's Equifax Consumer Disclosure, October 21, 2021, Second Iteration – Excerpt
C       Plaintiff's Equifax Dispute Results, December 10, 2021 – Excerpt
D       Plaintiff's Equifax Dispute Results, December 16, 2021 – Excerpt
E       Plaintiff's Equifax Consumer Disclosure, December 29, 2021 – Excerpt

# EXHIBIT A
## Plaintiff's Equifax Consumer Disclosure, October 21, 2021, First Iteration – Excerpt



# CREDIT REPORT

---

## MONICA CAINE

## Report Confirmation

**Date Reported: Oct 04, 2021**

| | | | |
|---|---|---|---|
| Collection Agency | ONLINE INFORMATION SERVICES | Balance Date | Oct 04, 2021 |
| Original Creditor Name | LAKELAND ELECTRIC | Account Designator Code | INDIVIDUAL_ACCOUNT |
| Date Assigned | Nov 05, 2019 | Account Number | |
| Original Amount Owed | $185 | Creditor Classification | Utilities |
| Amount | $185 | Last Payment Date | |
| Status Date | Oct 04, 2021 | Date of First Delinquency | Jan 30, 2019 |
| Status | UNPAID | | |

**Comments**

**Contact**

ONLINE INFORMATION SERVICES
685 W. FIRE TOWER RD.
WINTERVILLE, NC 28590
1-252-757-2101

# EXHIBIT B
## Plaintiff's Equifax Consumer Disclosure, October 21, 2021, Second Iteration – Excerpt



# CREDIT REPORT

---

### MONICA CAINE

### Report Confirmation

███████

**Date Reported: Oct 04, 2021**

| | | | |
|---|---|---|---|
| Collection Agency | ONLINE INFORMATION SERVICES | Balance Date | Oct 04, 2021 |
| Original Creditor Name | LAKELAND ELECTRIC | Account Designator Code | INDIVIDUAL_ACCOUNT |
| Date Assigned | Feb 04, 2020 | Account Number | ████████ |
| Original Amount Owed | $185 | Creditor Classification | Utilities |
| Amount | $185 | Last Payment Date | |
| Status Date | Oct 04, 2021 | Date of First Delinquency | Aug 30, 2019 |
| Status | UNPAID | | |

**Comments**

**Contact**

ONLINE INFORMATION SERVICES
685 W. FIRE TOWER RD.
WINTERVILLE, NC  28590
1-252-757-2101

# EXHIBIT C
## Plaintiff's Equifax Dispute Results, December 10, 2021 – Excerpt



## CREDIT FILE : December 10, 2021

## Confirmation # ███████████

### CAINE MONICA
███████████

---

**The Results Of Our Reinvestigation**

**Collection Agency Information**     *(This section includes accounts that have been placed for collection with a collection agency.)*

**>>>  We have researched the collection account. Account # -** ██████████  **The results are:** WE VERIFIED THAT THIS ITEM BELONGS TO YOU. THE FOLLOWING FIELDS HAVE BEEN MODIFIED: *STATUS DATE *BALANCE DATE.  If you have additional questions about this item please contact:  *ONLINE COL, PO Box 1489, Winterville, NC 28590-1489 Phone: (800) 765-5749*

**ONLINE INFORMATION SERVICES** *PO Box 1489 Winterville NC 285901489 : (800) 765-5749*

| Account Number | Date Reported | Date Assigned | Creditor Class | Client Name | Original Amount |
|---|---|---|---|---|---|
| | 12/2021 | 11/2019 | Utilities | ONLINE INFORMATION SERVICES | $ 185 |

| Status Date | Status | Date of 1st Delinquency | Balance Date | Balance Amount | Last Payment Date | Whose Account |
|---|---|---|---|---|---|---|
| 12/2021 | Unpaid | 01/2019 | 12/2021 | $ 185 | | Individual Account |

**>>>  We have researched the collection account. Account # -** ██████████  **The results are:** THIS CREDITOR HAS VERIFIED TO OUR COMPANY THAT THE BALANCE IS BEING REPORTED CORRECTLY. THE FOLLOWING FIELDS HAVE BEEN MODIFIED: *ADDITIONAL INFORMATION *STATUS DATE *BALANCE DATE.  If you have additional questions about this item please contact:  *ONLINE COL, PO Box 1489, Winterville, NC 28590-1489 Phone: (800) 765-5749*

**ONLINE INFORMATION SERVICES** *PO Box 1489 Winterville NC 285901489 : (800) 765-5749*

| Account Number | Date Reported | Date Assigned | Creditor Class | Client Name | Original Amount |
|---|---|---|---|---|---|
| | 12/2021 | 02/2020 | Utilities | ONLINE INFORMATION SERVICES | $ 185 |

| Status Date | Status | Date of 1st Delinquency | Balance Date | Balance Amount | Last Payment Date | Whose Account |
|---|---|---|---|---|---|---|
| 12/2021 | Unpaid | 08/2019 | 12/2021 | $ 185 | | Individual Account |

**ADDITIONAL INFORMATION:**
*Consumer Disputes After Resolution*

---

# EXHIBIT D
## Plaintiff's Equifax Dispute Results, December 16, 2021 – Excerpt



## *CREDIT FILE : December 16, 2021*

## *Confirmation #* ████████████

### CAINE MONICA
████████████████

---

**The Results Of Our Reinvestigation**

---

**Collection Agency Information**     (This section includes accounts that have been placed for collection with a collection agency.)

**>>>  We have researched the collection account. Account # -** ██████ **The results are:** WE VERIFIED THAT THIS ITEM BELONGS TO YOU. THE FOLLOWING FIELDS HAVE BEEN MODIFIED: *STATUS DATE *BALANCE DATE.  If you have additional questions about this item please contact:  **ONLINE COL, PO Box 1489, Winterville, NC 28590-1489 Phone: (800) 765-5749**

**ONLINE INFORMATION SERVICES**  PO Box 1489 Winterville NC 285901489 : (800) 765-5749

| Account Number | | Date Reported | Date Assigned | Creditor Class | Client Name | | Original Amount |
|---|---|---|---|---|---|---|---|
| ████ | | 12/2021 | 11/2019 | Utilities | ONLINE INFORMATION SERVICES | | $ 185 |
| Status Date | Status | Date of 1st Delinquency | | Balance Date | Balance Amount | Last Payment Date | Whose Account |
| 12/2021 | Unpaid | 01/2019 | | 12/2021 | $ 185 | | Individual Account |

**>>>  We have researched the collection account. Account # -** ██████ **The results are:** WE VERIFIED THAT THIS ITEM BELONGS TO YOU. THE FOLLOWING FIELDS HAVE BEEN MODIFIED: *ADDITIONAL INFORMATION *STATUS DATE *BALANCE DATE.  If you have additional questions about this item please contact:  **ONLINE COL, PO Box 1489, Winterville, NC 28590-1489 Phone: (800) 765-5749**

**ONLINE INFORMATION SERVICES**  PO Box 1489 Winterville NC 285901489 : (800) 765-5749

| Account Number | | Date Reported | Date Assigned | Creditor Class | Client Name | | Original Amount |
|---|---|---|---|---|---|---|---|
| ████ | | 12/2021 | 02/2020 | Utilities | ONLINE INFORMATION SERVICES | | $ 185 |
| Status Date | Status | Date of 1st Delinquency | | Balance Date | Balance Amount | Last Payment Date | Whose Account |
| 12/2021 | Unpaid | 08/2019 | | 12/2021 | $ 185 | | Individual Account |

ADDITIONAL INFORMATION:
**Consumer Disputes After Resolution**

# EXHIBIT E
## Plaintiff's Equifax Consumer Disclosure, December 29, 2021 – Excerpt



## CREDIT REPORT

---

MONICA CAINE

**Report Confirmation**

**Date Reported: Dec 20, 2021**

| | | | |
|---|---|---|---|
| Collection Agency | ONLINE INFORMATION SERVICES | Balance Date | Dec 20, 2021 |
| Original Creditor Name | LAKELAND ELECTRIC | Account Designator Code | INDIVIDUAL_ACCOUNT |
| Date Assigned | Nov 05, 2019 | Account Number | |
| Original Amount Owed | $185 | Creditor Classification | Utilities |
| Amount | $185 | Last Payment Date | |
| Status Date | Dec 20, 2021 | Date of First Delinquency | Jan 30, 2019 |
| Status | UNPAID | | |

**Comments**

Consumer disputes this account information

**Contact**

ONLINE INFORMATION SERVICES
685 W. FIRE TOWER RD.
WINTERVILLE, NC  28590
1-252-757-2101

# EXHIBIT E
## Plaintiff's Equifax Consumer Disclosure, December 29, 2021 – Excerpt

**Date Reported: Dec 20, 2021**

| Collection Agency | ONLINE INFORMATION SERVICES | Balance Date | Dec 20, 2021 |
|---|---|---|---|
| Original Creditor Name | LAKELAND ELECTRIC | Account Designator Code | INDIVIDUAL_ACCOUNT |
| Date Assigned | Feb 04, 2020 | Account Number | |
| Original Amount Owed | $185 | Creditor Classification | Utilities |
| Amount | $185 | Last Payment Date | |
| Status Date | Dec 20, 2021 | Date of First Delinquency | Aug 30, 2019 |
| Status | UNPAID | | |

**Comments**

Consumer disputes this account information

**Contact**

ONLINE INFORMATION SERVICES
685 W. FIRE TOWER RD.
WINTERVILLE, NC  28590
1-252-757-2101

**Date Reported: Dec 16, 2021**

| Collection Agency | ONLINE INFORMATION SERVICES | Balance Date | Dec 16, 2021 |
|---|---|---|---|
| Original Creditor Name | LAKELAND ELECTRIC | Account Designator Code | INDIVIDUAL_ACCOUNT |
| Date Assigned | Nov 05, 2019 | Account Number | |
| Original Amount Owed | $185 | Creditor Classification | Utilities |
| Amount | $185 | Last Payment Date | |
| Status Date | Dec 16, 2021 | Date of First Delinquency | Jan 30, 2019 |
| Status | UNPAID | | |

**Comments**

**Contact**

ONLINE INFORMATION SERVICES
685 W. FIRE TOWER RD.
WINTERVILLE, NC  28590
1-252-757-2101